## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Lenora D. Norman

v.

CUNA Mutual Insurance Society

February 20, 1986

Case No. (Law) 15,923

**By JUDGE JOHN K. MOORE**

This case was tried before the Court without a jury on November 14, 1985, and the Court's decision was deferred pending the filing of legal memoranda by counsel.

The relevant facts in this case are substantially undisputed. On August 20, 1980, Captain Robert D. Norman, who had retired from the U. S. Navy in 1975, executed a promissory note to secure a loan in the amount of $10,000.00 from the Virginia Beach Navy Federal Credit Union. (Plaintiff's Exhibit No. 1). The loan was to be repaid in full with simple interest at the annual rate of 10% in one year on August 20, 1981. The loan was not repaid on that date. Instead, on August 5, 1981, Captain Norman obtained an extension of the due date on his loan until October 1, 1982 (Defendant's Exhibit No. 2). At the time of the loan on August 20, 1980, there was a group life insurance contract loan protection plan issued to the Virginia Beach Navy Federal Credit Union by the defendant, CUNA Mutual Insurance Society (CUNA), which provided credit life insurance to the members of the Credit Union for the unpaid balance on their loans up to a maximum of $10,000 plus accrued interest. (Plaintiff's Exhibit No. 2). The Credit Union paid the premiums

for this insurance and debtors received a certificate of insurance loan protection, a copy of which is attached to the master insurance policy introduced in evidence. Captain Norman's widow testified at trial that he received a letter from the Credit Union stating that he was covered by credit life insurance on the loan in question.

Captain Norman died on October 14, 1982, and counsel for the parties have stipulated that the unpaid principal balance on the loan, plus accrued interest, amounts to $11,191.77. Apparently, it is also agreed by counsel that Captain Norman's widow, Lenora Norman, is the proper party plaintiff in this action.

The Plaintiff takes the position that Captain Norman was automatically covered under the group credit life insurance plan when he took out the loan and that it remained in effect until his death.

The Defendant, CUNA, takes the position that Captain Norman was never insured under the policy because the policy specifically excluded coverage on loan balances of members who did not meet the physical requirements as defined in the policy. In an endorsement dated January 1, 1971, the physical requirements section of the policy was amended to read in part as follows:

> Coverage under this contract shall apply to any loan or part thereof at the time and to the extent the proceeds of such loan are paid to the member and an actual indebtedness created, *upon condition that the member is then physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood.* (Italics added).

This case presents two primary issues: (1) Was Captain Norman covered by the credit life insurance at the time he obtained the loan on August 20, 1980? (2) If Captain Norman was insured at the time of the loan, did that insurance terminate on August 5, 1981, when he obtained an extension of the due date on the loan from August 20, 1981, until October 1, 1982, as a result of the letter from the Credit Union dated January 1, 1981, discontinuing credit life insurance benefits on new or refinanced loans?

As indicated, the Defendant claims that Captain Norman was a risk which they never agreed to insured from the inception of the policy and therefore he was

not insured when he took out the loan on August 20, 1980. In support of that position, the Defendant points to the language in the policy which excluded members who were "not physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood." The Defendant also places great emphasis on the fact that on June 8, 1979, Captain Norman applied for Social Security disability benefits and in a decision rendered on April 15, 1980, an Administrative Law Judge concluded that, effective February 1, 1979, he was disabled within the meaning of the Social Security Act. However, the fact remains that Captain Norman retired in 1975 after 30 years in the Navy.

From the evidence presented, it is clear to the Court that from 1975 until the date of this loan on August 20, 1980, Captain Norman's "livelihood" consisted of being a retired naval officer. The only other livelihood which could be supported by the evidence is that at various times from his retirement in 1975 until early 1982 he engaged in efforts to establish several businesses to provide aviation services to the navy, all of which were apparently of little success and provided him with little or no remuneration. Successful or not, he performed the usual duties of that livelihood both before and after the date of the loan.

It is also clear from the evidence that Captain Norman was capable of fully performing the "usual duties" of being a retiree, his livelihood at the time of this loan. The fact that he was only 52 years of age at the time and had previously been declared eligible to receive social security disability benefits has no effect on the status of his livelihood as a retiree for purposes of this insurance coverage.

It is interesting to note that the Defendant, CUNA, must have anticipated that retirees would be among the class of persons who would be insured under this group credit life insurance plan since, by endorsement dated July 1, 1979, the company deleted the provision excluding coverage on loan balances owing by any member whose age is 70 years or over.

If the Defendant desired more information about Captain Norman's physical condition or his livelihood and the usual duties thereof, it could very easily have asked him. Since they did not, and since they have chosen instead to rely on the language of their insurance policy,

they have no reason to now complain about Captain Norman's livelihood being that of a retired naval officer.

If the wording of that exclusion is ambiguous, then it must be resolved by invoking the familiar rule that ambiguous and doubtful language must be interpreted most strongly against the insurer and that insurance policies are to be liberally construed in favor of the assured and exceptions and exclusions are to be strictly construed against the insurer. *Ayers v. Harleysville Mut. Cas. Co.*, 172 Va. 383, 389 (1939).

Accordingly, the Court is of the opinion that under the terms of the insurance policy and the facts and circumstances in evidence, Captain Norman became insured at the time of his loan from the Credit Union.

If Captain Norman was covered by credit life insurance at the time the loan was made, the second issue to be decided is whether that insurance coverage terminated when he and the Credit Union agreed to extend the due date of his loan from August 20, 1981 until October 1, 1982?

The notification letter mailed out on January 1, 1981, by the Credit Union to its members made it very clear that loans made on or before February 28, 1981, would be eligible for benefits under the current loan protection program now in force, and that credit life insurance would be offered on all new or refinanced loans at the members' option effective March 1, 1981. (Plaintiff's Exhibit No. 3).

On August 5, 1981, which was approximately 2 weeks before the due date on Captain Norman's loan, he and the Credit Union agreed to extend the due date on his loan from August 20, 1981, until October 1, 1982. That agreement was memorialized by the execution of a simple one line statement, signed by the parties, which said, "I, Robert Norman do agree to pay off my share secured loan on October 1, 1982." (Defendant's Exhibit No. 2).

For the numerous reasons set forth in the brief filed by counsel for plaintiff in this action, the Court finds that the mere extension of the due date on this loan did not constitute a refinancing or convert the loan into a new loan.

Since the Court is of the opinion from all the evidence that Captain Norman was in fact covered by credit life insurance from the date of the loan until his death on October 14, 1982, it is unnecessary to rule on the

collateral issue of whether the insurance company's position regarding his health constitutes a contest of the policy and is barred by the incontestable clause in the policy and Section 38.1-482.6(c)(2) of the Code of Virginia. The defendant has introduced evidence in defense of the plaintiff's claim and has been unsuccessful. This Court has specifically found from the evidence that on August 20, 1980, Captain Norman was physically able to perform the usual duties of his livelihood and, accordingly, he was a risk which the insurance company assumed; that the credit life insurance became effective on that date and remained in effect continuously until the date of his death on October 14, 1982.

For the reasons stated, the Court grants judgment in favor of Plaintiff against the Defendant in the amount of $11,191.77, representing the amount of principal and accrued interest on said loan to the date of Captain Norman's death.

The Court is of the further opinion that there was no reasonable basis for the Defendant to deny coverage in this case and that in doing so they have not acted in good faith. Accordingly, pursuant to Section 38.1-32.1 of the Code of Virginia, counsel for plaintiff is awarded his costs plus attorney's fees in the amount of $2,797.94, which sum represents this Court's determination of reasonable fees in the amount of 25%.